E-FILED
Friday, 19 March, 2021  04:03:51 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | |
|---|---|
| ELIZABETH D.G.,<br>      Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>      Defendant. | Case No. 4:19-cv-04184-JEH |

**Order**

Now before the Court is the Plaintiff Elizabeth D.G.'s Motion for Summary Judgment (Doc. 12) and the Commissioner's Motion for Summary Affirmance (Doc. 16).[1] For the reasons stated herein, the Court DENIES the Plaintiff's Motion for Summary Judgment and GRANTS the Commissioner's Motion for Summary Affirmance.[2]

**I**

Elizabeth D.G. filed an application for supplement security income (SSI) on August 23, 2016, alleging disability beginning on March 9, 2013. Her claim was denied initially on December 6, 2016 and thereafter Elizabeth filed a request for hearing concerning her SSI application which was held before the Honorable Howard Kauffman (ALJ) on March 23, 2018. At the hearing, Elizabeth was represented by an attorney, and Elizabeth and a vocational expert (VE) testified. Following the hearing, Elizabeth's SSI claim was denied on June 13, 2018. Her

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 10, 11).
[2] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 8) on the docket.

request for review by the Appeals Council (AC) was granted. In its August 12, 2019 Decision, the AC explained that it agreed with the ALJ's findings under Steps 1, 2, 3, and 4 of the sequential evaluation, but it determined the ALJ erred in not admitting certain evidence into the record. The AC admitted and exhibited the excluded evidence into the record "without finding that the evidence changes the severe mental impairments or the residual functional capacity in the hearing decision." AR 5. Elizabeth filed the instant civil action seeking review of the ALJ's Decision on September 25, 2019.

## II

At the time of the hearing, Elizabeth was 49 years old and lived with her husband and daughter. As part of her SSI application, Elizabeth claimed the following conditions limited her ability to work: diabetes with neuropathy; anxiety; and psychological disorder. AR 203. Elizabeth testified that she "basically . . . d[id] nothing" with her time, though she knew how to get to her doctor's office. AR 50. In a typical day, Elizabeth got up, ate breakfast, went food shopping by herself, and did the laundry. In a typical evening, she sat down and watched TV, cleaned, and washed dishes.

Elizabeth testified that with regard to her diabetes, she had high sugars and low sugars and her A1C numbers were "pretty good."[3] AR 48. She said she experienced neuropathy as a result of her diabetes, and she wore diabetic shoes. She said amitriptyline did "[n]ot really" help her foot pain, and she also took Gabapentin for that pain. AR 51. With regard to her anxiety, Elizabeth testified that her anxiety was worse when she had "like a major problem, like when I'm stressed like when my husband lost a job[.]" AR 49. She took Lorazepam to treat her anxiety. She was not seeing a therapist and explained she did not do so because

---

[3] Diabetes is diagnosed at an A1C of greater than or equal to 6.5%. American Diabetes Association, https://www.diabetes.org/a1c/diagnosis (last visited Mar. 18, 2021).

she did not have the time, noting that she went to see her doctor every three months "any way." AR 50. She said she "should go." *Id*. She was last hospitalized for anxiety before 2012.

Upon questioning by her attorney, Elizabeth stated that her blood sugar[4] would get up to 400 about four times per month. She did not feel when her blood sugar was high, but she did feel low blood sugar of 40 which occurred five to six times per month. She said she slept most of the day. She said she could walk for five to 10 minutes before she would have to sit and could stand for ten minutes.

The VE was then questioned.

### III

At Step Two of his Decision, the ALJ determined Elizabeth had the following severe impairments: diabetes mellitus, peripheral neuropathy, and obesity. AR 84. The ALJ identified as non-severe impairments hypertension, acute kidney injury, fatty liver disease, hyperlipidemia, Vitamin B12 deficiency, hemorrhoids, diverticulosis, and/or iron deficiency anemia. The ALJ also identified as non-severe Elizabeth's mental impairment of anxiety. The ALJ considered, among other things, that there was no evidence Elizabeth followed up with a psychiatric provider, she reported experiencing anxiety with worrying about finances and her daughter's health ("situational stressors"), the consultative psychiatric examiner expressed a prognosis of "good," Elizabeth reported she felt able to function in terms of concentration and managed both the family and their finances, and she did not seek inpatient or emergency treatment for mental health symptoms after the protective filing date. AR 86. The ALJ found Elizabeth had no

---

[4] A fasting blood sugar level of less than 100 mg/dl is normal whereas a fasting blood sugar level of 126 mg/dl or higher indicates diabetes. American Diabetes Association, https://www.diabetes.org/a1c/diagnosis (last visited Mar. 18, 2021).

limitation in two of the four broad areas of mental functioning, and mild limitation in the remaining two.

The ALJ made the following residual functional capacity (RFC) finding: "the claimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except that she is capable of occasional climbing, balancing, stooping, kneeling, crouching and crawling." AR 88. In formulating that RFC, the ALJ considered Elizabeth's testimony and her November 2016 Function Report in which she indicated she experienced pain ranging from pins and needles to stabbing, numbness, and neuropathy of her feet that limited her ability to stand and walk and indicated lying down and elevating her feet helped relieve her symptoms. The ALJ detailed medical records pertaining to Elizabeth's diabetes dated between September 2013 and September 2017. The ALJ also detailed the instances Elizabeth reported her prescribed medications improved her bilateral foot symptoms, and the instances Elizabeth's compliance with her medications resulted in better controlled diabetes. The ALJ specifically noted that while Elizabeth was referred to an endocrinology provider, prescribed physical therapy, recommended she meet with a nutritional consultant, and referred for consultation for bariatric surgery, she did not do as referred/prescribed/recommended. The ALJ also detailed Elizabeth's activities of daily living.

As for the opinion evidence, the ALJ detailed: State Agency psychological consultant Monica Yeater, Psy.D.'s November 2016 opinion that Elizabeth had mild limitations and a non-severe mental impairment; and consultative psychiatric examiner Karen Rafferty, Psy.D.'s March 2016 opinion that Elizabeth had no limitation or only mild limitation in her ability to understand, remember, and carry out instructions. The ALJ also detailed Elizabeth's treating doctor Edward Rogers, Jr., M.D.'s November 2016 and October 2017 opinions. In November 2016, Dr. Rogers indicated Elizabeth was capable of sitting and/or

4

standing/walking for less than two hours in an eight hour day, she must avoid all exposure to extreme cold, her symptoms were severe enough to interfere constantly with attention and concentration needed to perform simple work tasks, and she was incapable of performing low stress work and could not work. In October 2017. Dr. Rogers indicated that Elizabeth's conditions made her totally unemployable, she was capable of sitting for zero to two hours and standing/walking for one hour in an eight hour day, she needed to alternate between sitting and standing every 10 minutes, her symptoms were severe enough to interfere constantly with attention and concentration needed for simple work tasks, she would require unscheduled breaks during the workday, and she was likely to be absent from work four or more days per month due to her conditions.

## IV

Elizabeth makes the general argument that the Agency erred by failing to evaluate the opinion of Elizabeth's treating physician consistent with the regulations and Seventh Circuit precedent.

### A

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind

might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 416.966. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of his impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform his past relevant work which includes an assessment of the claimant's residual functional capacity; and

6

5)      is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Elizabeth claims error on the ALJ's part at Step Four.

## B

Because Elizabeth filed her SSI application before March 27, 2017, the treating physician rule was applicable to her claim. The treating physician rule provides that an ALJ must give controlling weight to the medical opinion of a treating physician if the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (citing *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006)); 20 C.F.R. § 416.927(c)(2). "An ALJ who does not credit such an opinion must offer good reasons for doing so and must address the appropriate weight to give the opinion." *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016). If the ALJ does not give a treating physician's opinion controlling weight, the Social Security regulations require the ALJ to consider: 1) the length, nature, and extent of the treatment relationship; 2) the frequency of examination; 3) the physician's specialty; 4) the types of tests performed; 5) and the consistency and supportability of the physician's opinion. 20 C.F.R. § 416.927; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

Elizabeth first argues as the "harm" in this case that treating Dr. Rogers's opinions establish limitations in excess of the RFC finding, and, moreover, they met her burden of coming forward with evidence to establish that she is "disabled" pursuant to the Agency's definition of that term. Secondly, she contends that the Agency failed to provide legally sufficient reasons for rejecting treating Dr. Rogers's opinions. The Commissioner counters that substantial evidence supports the ALJ's assessment of the opinion evidence, and, specifically, the ALJ reasonably weighed Dr. Rogers's opinions.

**1**

Elizabeth's first argument puts the cart before the horse. The mere fact that a treating physician's opinion establishes limitations "plainly" in excess of the RFC finding does not sound the death knell for the RFC finding. An ALJ must assess a claimant's RFC "based on *all the relevant evidence* in [the claimant's] case record." 20 C.F.R. § 416.945(a)(1) (emphasis added). The medical opinions of record – even from a claimant's treating physicians – are just *some* of the evidence the ALJ is tasked to consider. Even then, as Elizabeth recognizes in her brief and as set forth above, a treating physician's opinion must be analyzed by an ALJ in a certain way. Her further argument that the VE's testimony establishes Elizabeth is "plainly" disabled when considered in light of Dr. Rogers's opinion suffers from the same defect; it is based upon the false premise that a treating doctor's opinion is the only decisive evidence in a claimant's record. Lastly, it is true that a claimant bears the burden of coming forward with evidence to establish that she is "disabled." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004); *see also* 20 C.F.R. § 416.912(a)(1) (stating that the claimant is responsible for proving that she is disabled). But once again, a claimant's own perception that she has met that burden via her treating doctor's opinion ignores the fact that the treating doctor's opinion is one piece of evidence among several others and, in any event, is not necessarily entitled to controlling

weight. *See Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996) ("However, while the treating physician's opinion is important, it is not the final word on a claimant's disability").

**2**

Regarding Elizabeth's argument that the Agency failed to provide legally sufficient reasons for rejecting Dr. Rogers's opinions, Elizabeth faults the ALJ for failing to address certain of the Section 416.927(c) factors. She argues there is no indication the ALJ considered the "plainly" relevant factors of the treatment relationship between Dr. Rogers and herself or his specialization. The Commissioner argues the ALJ was not obligated to address every factor in his Decision. In *Schreiber v. Colvin*, the Seventh Circuit Court of Appeals did not find fault with the ALJ's failure to explicitly weigh each factor of Section 416.927(c) where the decision made clear that the ALJ "was aware of and considered many of the factors[.]" 519 F. App'x 951, 959 (7th Cir. 2013) (unpublished opinion). The Seventh Circuit has repeatedly explained that an ALJ may discount a treating physician's medical opinion as long as he "minimally articulates his reasons for crediting or rejecting evidence of disability." *Schimdt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) ("An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician . . . or when the treating physician's opinion is internally inconsistent . . . as long as he minimally articulates his reasons for crediting or rejecting evidence of disability"); *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018) (unpublished opinion) ("In weighing a treating physician's opinion, an ALJ must consider the factors found in 20 C.F.R. § 416.927(c), but need only 'minimally articulate' his reasoning; the ALJ need not explicitly discuss and weigh each factor") (citing *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008)).

9

Thus, here, Elizabeth is not entitled to remand based upon the fact that the ALJ did not explicitly address every factor set forth in Section 416.927(c). In any event, Elizabeth overstates the ALJ's omissions. Regarding Dr. Rogers's treatment relationship[5] (a Section 416.927(c) factor) with Elizabeth, the ALJ identified Dr. Rogers as her "primary care provider" and in several instances in the Decision discussed Dr. Rogers's treatment records which spanned several years. The ALJ later explicitly "recognize[d]" that Dr. Rogers was Elizabeth's "treatment provider." AR 93. Such comments do not suggest that the ALJ erroneously failed to properly consider the fact of the treatment relationship between Elizabeth and Dr. Rogers. The ALJ's failure to expressly state that he considered the nature and extent of the treatment relationship is not somehow more egregious where he did not even suggest, no less find, that Dr. Rogers did not have "reasonable knowledge" of Elizabeth's impairments (as Elizabeth argues). Section 416.927(c)(2)(ii) provides that when a treating source has "reasonable knowledge" of a claimant's impairments, the source's medical opinion will be given more weight than it would be if it were from a non-treating source. 20 C.F.R. § 416.927(c)(2)(ii). The regulation does not provide that the source's medical opinion in that instance will be given such weight that a disability finding necessarily follows. Regarding Dr. Rogers's specialization[6] – internal medicine – the Court agrees with the Commissioner that such a specialization undermines Elizabeth's argument insofar as Dr. Rogers opined, in part, as to the limitations presented by her mental impairment.[7]

---

[5] In his October 2017 Medical Source Statement, Dr. Rogers indicated he treated Elizabeth for over 12 years, every three to four months. AR 667.

[6] Elizabeth provides in her brief that he is a board-certified internal medicine physician. Pltf's MSJ (Doc. 13 at pg. 11).

[7] Moreover, as the Commissioner points out, Elizabeth does not challenge the weight given to the opinions rendered by Dr. Yeater and Dr. Rafferty as to Elizabeth's mental impairment.

Of course, Elizabeth also argues that the reasons the ALJ *did* provide to support his findings as to Dr. Rogers's opinion suffer from such defects as to warrant remand. She principally argues that the ALJ impermissibly substituted his lay opinion for that of Dr. Rogers's. The Commissioner counters that the ALJ provided good reasons for discounting Dr. Rogers's opinions and properly analyzed his opinions under the regulatory factors. The Court agrees with the Commissioner.

An ALJ must "minimally articulate" *good* reasons for rejecting a treating doctor's opinion. *See Stage*, 812 F.3d at 1126 ("An ALJ who does not credit [a treating physician's opinion] must offer good reasons for doing so and must address the appropriate weight to give the opinion"); *Stocks v. Saul*, No. 19-3298, 2021 WL 387515, at *3 (7th Cir. Feb. 2, 2021) (unpublished opinion) (clarifying that minimal articulation must still amount to the ALJ supporting his conclusions with substantial evidence and must provide "good reasons" in the context of rejecting a treater's opinion). Here, after the ALJ detailed Dr. Rogers's November 25, 2016 and October 20, 2017 opinion, he recognized both that Dr. Rogers was a treatment provider and also that "the determination of disability under the SSA is vested in the sole discretion of the Commissioner as to his statement of November 25, 2016[.]"[8] AR 93. The ALJ was well within bounds in rejecting Dr. Rogers's statement that Elizabeth "cannot work." AR 93 (citing AR 537). A separate subdivision of the regulation Elizabeth so strongly argues the ALJ failed to entirely comply with provides, in pertinent part, that, "A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled." 20 C.F.R. § 416.927(d)(1). That is so because the

---

[8] Dr. Rogers stated both that Elizabeth "cannot work" and that her foot pain and anxiety "prohibits" Elizabeth's employment. AR 537.

Commissioner is "responsible for making the determination or decision about whether [a claimant] meet[s] the statutory definition of disability." *Id.*

The ALJ also reasoned that Dr. Rogers's indication of Elizabeth's significant limitations was not consistent with his identified prognoses for Elizabeth of "fair" and "good" and were "far too extensive in light of the record[.]" AR 93. The ALJ specifically pointed to the evidence that Elizabeth's diabetes was able to be controlled and at goal when she took medications as directed and otherwise complied with treatment, the exacerbating role that treatment noncompliance played, the improvement achieved despite her failure to consult with an endocrinology or nutritional provider as directed, the significant improvement in her peripheral neuropathy despite failing to obtain additional recommended treatment, her own representations as to when symptoms improved, the absence of evidence that Elizabeth sought or underwent inpatient psychiatric hospitalization or emergency treatment for uncontrolled mental health symptoms, and the evidence that her mental health symptoms had been managed and stable with medication taken as needed.

Earlier in the Decision, the ALJ considered medical records which provided that while Elizabeth had issues with her diabetes throughout 2015 and into 2016, though later in 2016 and through 2017 her diabetes was "near goal" or "at goal," monofilament exams continued to be normal as before, her feet were doing well overall, and she did not seek or undergo significant additional treatment relating to her symptoms beyond diabetic footwear and orthotics provided by her podiatrist. The ALJ also considered records which revealed Elizabeth reported experiencing bilateral foot pain more with rest and less with walking, medication helped her foot pain at night, and she reported her foot neuropathy was worse at rest but caused her very little discomfort and did not bother her when she was up and moving around during the day. The ALJ also considered Elizabeth's daily

activities: she had no problems attending to her personal care needs; she performed household chores; she drove and left the house to shop; and she reported in October 2016 that she had worked part-time cleaning houses since before the protective filing date in this case. The ALJ articulated that the State Agency psychological consultant's November 2016 opinion that Elizabeth had a non-severe mental impairment and the consultative psychiatric examiner's opinion that Elizabeth had only mild limitation in, among other things, understanding, remembering, and carrying out complex instructions and interacting appropriately with the public were entitled to "significant weight." AR 92. The ALJ reasoned such weight was warranted where there was an absence of any documentation indicating that Elizabeth sought or underwent inpatient psychiatric hospitalization or emergency treatment for uncontrolled mental health symptoms, her mental health symptoms were managed and stable with medication managed by her primary care provider, and situational stressors played an exacerbating role upon her symptoms.

The ALJ certainly minimally articulated his reasons for giving "little weight" to Dr. Rogers's opinions and the foregoing illustrates that his reasons were good reasons supported by substantial evidence of record. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("[Substantial evidence] means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Contrary to Elizabeth's assertion that the ALJ played doctor, it is obvious the ALJ did as was required of him – he considered whether Dr. Rogers's opinions were consistent with the record as a whole and whether his opinions found support in his own treatment notes and explanations for the limitations to which he opined. She suggests the ALJ could have obtained testimony from a medical expert, arranged for a consultative examination to provide an opinion regarding her physical functional limitations, or even re-

contacted Dr. Rogers with questions or for clarification instead of relying upon his own lay judgments about the medical evidence. "An ALJ need recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled." *Skarbek*, 390 F.3d at 504. Here, there was adequate medical evidence from Dr. Rogers to enable the ALJ to both engage in the relevant inquiry under 20 C.F.R. § 416.927 and to decipher for purposes of the RFC finding the extent of limitation posed by Elizabeth's severe impairments. Contrary to Elizabeth's additional assertion, nothing in the Decision indicates the ALJ gave little weight to Dr. Rogers's opinions because they were not 100% consistent with the underlying record or free from any doubt. Rather, the ALJ identified enough *in*consistency to support his finding that Dr. Rogers's opinions were entitled to no more than little weight. The way in which Elizabeth recites several parts of record evidence in her brief amounts to an invitation to the Court to reweigh the evidence. The Court cannot do so. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (explaining that in reviewing an ALJ's decision, the court cannot reweigh evidence, resolve conflicts in the record, decide questions of credibility, or otherwise substitute its own judgment for that of the Commissioner).

On a final note, the Commissioner makes a good point: to the extent Elizabeth suggests that Dr. Rogers's opinions should have been afforded much greater weight, she does not explain how the ALJ could have simultaneously adopted all of Dr. Rogers's opinions which took opposite views in some respects. This only underscores why an ALJ is tasked with wading through the opinion evidence of record in accordance with 20 C.F.R. § 416.927, and why that regulation clarifies that the final responsibility for deciding a claimant's RFC is reserved to the Commissioner. 20 C.F.R. § 416.927(d)(2).

**V**

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 12) is DENIED and the Defendant's Motion for Summary Affirmance (Doc. 16) is GRANTED. The Clerk of Court is directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Andrew Saul, Commissioner of Social Security, denying benefits to the Plaintiff, Elizabeth D.G., is AFFIRMED." This matter is now terminated.

*It is so ordered.*

Entered on March 19, 2021.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE

15